## STEPHEN C. ELDRIDGE *v.* PHYLLIS ELDRIDGE
## (SC 15716)

Callahan, C. J., and Borden, Berdon, Norcott, Katz, Palmer and McDonald, Js.

524

Argued December 2, 1997—officially released April 21, 1998

*Richard L. Albrecht*, with whom was *Jocelyn B. Hurwitz*, for the appellant (plaintiff).

*Robert H. Rubin*, for the appellee (defendant).

*Opinion*

KATZ, J. The plaintiff husband appeals from the Appellate Court's affirmance of an order of contempt for his failure to pay weekly alimony. We conclude that it was not an abuse of the trial court's discretion to hold the plaintiff in contempt but that it was an abuse of its discretion to award the defendant attorney's fees of $15,067.50. Accordingly, we reverse that part of the Appellate Court judgment.

The record discloses the following facts. The parties were divorced on November 14, 1983. As part of the dissolution, the plaintiff, Stephen C. Eldridge, was ordered to pay periodic unallocated alimony and support for the defendant, Phyllis Eldridge, and their two minor children in twelve equal monthly installments. The amount was to be reduced by $15,000 on the eighteenth birthday of each of the two children.

In addition, the trial court ordered that, in the event that the defendant's gross annual earnings exceeded $25,000, one half of the amount by which her earnings exceeded $25,000 should be deducted from the periodic unallocated alimony. Specifically, the divorce decree provides in relevant part: "It is contemplated at this time that the defendant will continue her present part-time employment and that in the future she will be employed full-time, however, such employment shall not be considered a change of circumstances until her gross annual income from earnings shall exceed $25,000. One half of the amount by which her earnings exceed $25,000 shall be deducted from the periodic unallocated alimony and support hereinbefore awarded." The plaintiff appealed from that judgment, which was affirmed by the Appellate Court in *Eldridge* v. *Eldridge*, 4 Conn. App. 489, 495, 495 A.2d 283 (1985).

Thereafter, in 1987, the defendant began to earn in excess of $25,000 annually as a teacher in the New York city school system. Nevertheless, it was not until July, 1994, that the plaintiff, as a result of his request for information, first learned of this fact. The defendant never informed the plaintiff of this change in circumstances despite the fact that it would have enabled the plaintiff, under the terms of the dissolution judgment, to seek a modification of alimony.[1]

[1] At the time of the trial proceeding in the present appeal, both children had attained the age of majority. *Eldridge* v. *Eldridge*, supra, 4 Conn. App. 490.

On August 7, 1994, the plaintiff, believing that he was due a credit, began withholding alimony payments, and, on November 1, 1994, he filed a motion for an order to determine the extent of the credit owed him by the defendant. Shortly thereafter, the defendant moved to have the plaintiff held in contempt, and the plaintiff moved for a modification of alimony. During the combined hearing on the motions in June, 1995, the defendant asked the court to order the plaintiff to pay alimony while the motions were pending. The trial court declined to enter such an order, and, on November 13, 1995, determined that the plaintiff owed the defendant $47,708.30 in alimony and that the defendant owed the plaintiff $57,765.28 for overpayments. On the basis of its determination that the plaintiff wilfully had failed to pay alimony beginning in August, 1994, the trial court found the plaintiff in contempt and, pursuant to General Statutes § 46b-87,[2] awarded $15,067.50 in attorney's fees to the defendant. The award of attorney's fees was offset by the plaintiff's overpayments, and the court ordered the plaintiff to pay the defendant a net amount of $5010.52.

The plaintiff appealed from the trial court's orders, which were affirmed by the Appellate Court in a per curiam opinion. *Eldridge* v. *Eldridge*, 45 Conn. App. 904, 692 A.2d 1320 (1997). We granted the plaintiff's petition for certification as to the following issue: "In the circumstances of this case, did the Appellate Court properly affirm the contempt judgment rendered against the plaintiff for his failure to pay alimony to the defendant even though the alimony payments previously made by the plaintiff exceeded his liability to

---

[2] General Statutes § 46b-87 provides in relevant part: "When any person is found in contempt of an order of the Superior Court entered under section 46b-60 to 46b-62, inclusive, 46b-81 to 46b-83, inclusive, or 46b-86, the court may award to the petitioner a reasonable attorney's fee and the fees of the officer serving the contempt citation, such sums to be paid by the person found in contempt . . . ."

the defendant?" *Eldridge* v. *Eldridge,* 241 Conn. 928, 696 A.2d 1265 (1997).[3]

We conclude that the trial court properly determined that the plaintiff was able to obey the court order and that his failure to meet the court ordered obligation was wilful. Although we affirm the trial court's finding of contempt, we, nevertheless, conclude that the trial court abused its discretion with regard to the issue of the defendant's counsel fees, and, therefore, reverse that part of the judgment and remand the case to the trial court for a new determination of counsel fees.

I

In reviewing the plaintiff's claimed improprieties concerning the finding of contempt, we are guided by standards that limit our review. "[O]ur review [of a finding of civil contempt] is technically limited to questions of jurisdiction such as whether the court had authority to impose the punishment inflicted and whether the act or acts for which the penalty was imposed could constitute a contempt. . . . This limitation originates because by its very nature the court's contempt power

---

[3] In the plaintiff's petition for certification, he requested that we certify the following issue: "As a matter of law, may a court hold an alimony payor in contempt for failing to pay alimony when the court simultaneously concludes that the payee owes the payor a credit for prepaid alimony exceeding the amount of the alimony arrearage?" We rephrased the certified question to read as follows: "In the circumstances of this case, did the Appellate Court properly affirm the contempt judgment rendered against the plaintiff for his failure to pay alimony to the defendant even though the alimony payments previously made by the plaintiff exceeded his liability to the defendant?" *Eldridge* v. *Eldridge,* supra, 241 Conn. 928. Therefore, although the question does not expressly include the propriety of the attorney's fees award, we read the question broadly so as to embrace this issue as part of "the circumstances of this case." Id.; see *Schult* v. *Schult,* 241 Conn. 767, 776 and n.8, 699 A.2d 134 (1997) (this court may rephrase certified questions in order to render them more accurate in framing issues that case presents); *Stamford Hospital* v. *Vega,* 236 Conn. 646, 648–49 n.1, 674 A.2d 821 (1996) (same); *Newman* v. *Newman,* 235 Conn. 82, 87, 663 A.2d 980 (1995) (same).

. . . must be balanced against the contemnor's fundamental rights and, for this reason, there exists the present mechanism for the eventual review of errors which allegedly infringe on these rights. . . . We have found a civil contempt to be improper or erroneous because: the injunction on which it was based was vague and indefinite . . . the findings on which it was based were ambiguous and irreconcilable . . . the contemnor's constitutional rights were not properly safeguarded . . . the penalties imposed were criminal rather than civil in nature . . . and the contemnor, through no fault of his own, was unable to obey the court's order." (Citations omitted; internal quotation marks omitted.) *Papa* v. *New Haven Federation of Teachers*, 186 Conn. 725, 731–32, 444 A.2d 196 (1982); see also *Dunham* v. *Dunham*, 217 Conn. 24, 29, 584 A.2d 445 (1991).

" 'Although . . . plenary review of civil contempt orders extends to some issues that are not truly jurisdictional, its emphasis on fundamental rights underscores the proposition that the grounds for any appeal from a contempt order are more restricted than would be the case in an ordinary plenary appeal from a civil judgment.' " *Commissioner of Health Services* v. *Youth Challenge of Greater Hartford, Inc.*, 219 Conn. 657, 666, 594 A.2d 958 (1991), quoting *Dunham* v. *Dunham*, supra, 217 Conn. 29–30; see *Tomasso Bros., Inc.* v. *October Twenty-Four, Inc.*, 230 Conn. 641, 658–59, 646 A.2d 133 (1994).

The plaintiff argues first that his conduct was not contemptuous of the court's orders because he held a good faith belief that he was justified in suspending periodic alimony payments. Second, the plaintiff argues that he should not have been held in civil contempt because civil contempt requires that the contemnor be able to purge himself and, in light of the credit he was due, he had no means by which to purge himself. We find neither of the plaintiff's claims to be persuasive.

In order to constitute contempt, a party's conduct must be wilful. *Connolly* v. *Connolly*, 191 Conn. 468, 483, 464 A.2d 837 (1983). "The contempt remedy is particularly harsh . . . and may be founded solely upon some clear and express direction of the court. . . . One cannot be placed in contempt for failure to read the court's mind." (Citations omitted; internal quotation marks omitted.) *Blaydes* v. *Blaydes*, 187 Conn. 464, 467, 446 A.2d 825 (1982). A good faith dispute or legitimate misunderstanding of the terms of an alimony or support obligation may prevent a finding that the payor's nonpayment was wilful. This does not mean, however, that such a dispute or misunderstanding will preclude a finding of wilfulness as a predicate to a judgment of contempt. Whether it will preclude such a finding is ultimately within the trial court's discretion. "It is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order." *Marcil* v. *Marcil*, 4 Conn. App. 403, 405, 494 A.2d 620 (1985).

The trial court found that the plaintiff had decided to terminate his alimony payments "based on his belief that Judge Levine's order entitled him to total alimony credits from the defendant's credits of $225,195."[4] In rejecting the plaintiff's claim that this constituted a legitimate basis upon which to justify his behavior, the trial court stated: "The short answer to that claim is that he was required to file a motion for modification before he would be entitled to any credit." Relying on the Appellate Court's opinion in the plaintiff's appeal

[4] The figure of $225,195 was the amount of credit claimed by the plaintiff. He arrived at this figure based upon his assessment of the defendant's "gross income" derived from a variety of sources, including her employment income, voluntary payments into her pension and retirement plans and gifts from her father.

from the judgment of dissolution; *Eldridge* v. *Eldridge*, supra, 4 Conn. App. 494; the trial court determined that "[t]he plaintiff knew or should have known that he was not entitled to terminate the order unilaterally himself. The plaintiff is a college graduate, and the court found him to be an intelligent individual with a successful career as a certified public accountant for many years. It is elementary that court orders must be complied with until they are modified by a court or successfully challenged." This rationale was repeated in the trial court's memorandum of decision denying the plaintiff's motion to set aside, correct, articulate and reargue. "[T]he Appellate Court stated that any modification of the alimony order would be subject to a motion for modification by the plaintiff. *Eldridge* v. *Eldridge*, [supra, 489]. The fact that the court also found the plaintiff . . . was entitled to an alimony credit of $57,765.28 from the defendant . . . for earnings she made as a school teacher from 1987 to 1995 which exceeded $25,000 did not excuse him from filing a motion for modification pursuant to [General Statutes] § 46b-86 . . . and obtaining court approval prior to his terminating payment of the alimony order."

The general rule was properly stated by the trial court in this case: "An order of the court must be obeyed until it has been modified or successfully challenged. See *Fox* v. *First Bank*, 198 Conn. 34, 40 n.3, 501 A.2d 747 (1985)." *Jaconski* v. *AMF, Inc.*, 208 Conn. 230, 234–35, 543 A.2d 728 (1988). It is true that there may be some orders that are self-executing, either by their terms ("the plaintiff shall pay to the defendant as child support for each child the sum of $15,000 per year until the child's eighteenth birthday when said support shall cease") or by operation of law (terminating alimony upon remarriage). This case does not, however, involve such an order.

Although the decision by the trial court in the original action for dissolution did not *expressly* state that the plaintiff would have to move to modify the award of alimony in the event of a change of circumstance,[5] the Appellate Court did expressly state this prescribed course of conduct. By stating that the defendant's entitlement to alimony "would be subject to modification upon motion by the plaintiff," the Appellate Court explicitly told the plaintiff to seek the assistance of the court and not to engage in self-help. *Eldridge* v. *Eldridge*, supra, 4 Conn. App. 494; cf. *Blaydes* v. *Blaydes*, supra, 187 Conn. 466–67 (legitimate difference of opinion as to meaning of term "adjusted gross income" after tax law change). Even the plaintiff in this case recognized the variable associated with the term "adjusted gross income." See footnote 4 of this opinion. The Appellate Court's decision clearly put the plaintiff on notice that a motion for modification was needed in order to reduce his alimony payments. The trial court therefore properly concluded that the plaintiff was not justified in his stated belief that he simply could withhold payments and properly determined that his expla-

---

[5] The trial court's judgment in the dissolution action stated in relevant part: "The plaintiff is to pay to the defendant as periodic, unallocated alimony and support for herself and the minor children, the sum of $65,000 per year in twelve equal monthly installments on the tenth day of the month, beginning November 10, 1983. On the eighteenth birthday of each child, the annual amount shall be reduced by $15,000. . . .

"It is contemplated at this time that the defendant will continue her present part-time employment and that in the future, she will be employed full-time, however, such employment shall not be considered a change of circumstances until her gross annual income from earnings shall exceed $25,000. One half of the amount by which her earnings exceed $25,000 shall be deducted from the periodic unallocated alimony and support hereinbefore awarded."

Although the order in the dissolution action was not as clear as it could have been, the use of the term "change of circumstances" should have alerted the plaintiff and his counsel to the fact that a court ordered modification was necessary. Cases interpreting that term and what is required to demonstrate that such a change has occurred are legion. See *Borkowski* v. *Borkowski*, 228 Conn. 729, 735–36, 638 A.2d 1060 (1994), and cases cited therein.

nations were not adequate to explain his failure to obey the court order.[6]

"The inability of a party to obey an order of the court, without fault on his part, is a good defense to the charge of contempt." *Mallory* v. *Mallory*, 207 Conn. 48, 57, 539 A.2d 995 (1988). "The contemnor must establish that he cannot comply, or was unable to do so." *Bunche* v. *Bunche*, 36 Conn. App. 322, 325, 650 A.2d 917 (1994), citing *Zivic* v. *Zivic*, 26 Conn. App. 5, 10, 596 A.2d 475 (1991). This is not a case in which the defendant did not have the ability to comply. Rather, he chose not to. The fact that the plaintiff ultimately was proven correct in his calculations of the various debits and credits between him and the defendant does not mean, as the plaintiff argues, that the court was precluded from finding him in contempt as a matter of law. Whether to find a party in contempt is ultimately a matter within the trial court's discretion. The trial court could have exercised its discretion so as not to find the plaintiff in contempt. The fact that the plaintiff exercised self-help when he was not entitled to do so, however, by disobeying the court's order *without first* seeking a modification was a sufficient basis for the trial court's contrary exercise of discretion. The court was entitled to determine that to exonerate the plaintiff would be an undue inducement to litigants' exercise of self-help.[7]

---

[6] Had the plaintiff filed a motion to modify when he first learned of the defendant's change in circumstances and had he continued to make the alimony payments, that motion could have been granted, retroactive to the date of service. See General Statutes § 46b-86 (a). Consequently, there would have been no financial disincentive in filing the motion.

[7] The dissent would conclude that the plaintiff did not act in contempt of court largely based upon three factors: the order in the original dissolution action was self-executing, thereby eliminating the need for a motion for modification; the defendant's July 29, 1994 letter to the plaintiff authorized him to adjust his alimony payments to her; and the credit awarded to the plaintiff by the trial court implicitly recognized that the original order was self-executing because, had it not been, the credit would have been tantamount to an impermissible retroactive modification of the order. As we have stated in this opinion, we do not agree with the dissent's characterization of

Finally, the plaintiff claims that the fact that he was ultimately owed a credit somehow means that he did not have the ability to purge himself. In civil contempt proceedings, the contemnor must indeed have the ability to purge himself. *Mays* v. *Mays*, 193 Conn. 261, 266, 476 A.2d 562 (1984). That consideration, however, makes sense when there has been a punishment imposed. Id., 265. In this case, the trial court did not impose a punishment as that term is commonly understood. The alimony allotted to the defendant was to "[compensate] the complainant for losses sustained." (Internal quotation marks omitted.) *Ullmann* v. *State*, 230 Conn. 698, 710, 647 A.2d 324 (1994). Therefore, the fact that the plaintiff was ultimately owed a credit does

---

the original order. With regard to the letter, the defendant did not tell the plaintiff to terminate her alimony payments; rather she told him to make the necessary adjustments. The plaintiff chose instead to make no alimony payments. Had he elected to make the adjustment, he would have reduced the monthly payment from $2916.67 to reflect a decrease of approximately $5200 per annum. Consequently, the trial court acted well within its discretion in finding the plaintiff in contempt.

Finally, we recognize the well established legal principle that alimony may not be modified retroactively; *Favrow* v. *Vargas*, 231 Conn. 1, 38–40, 647 A.2d 731 (1994); and therefore, we also appreciate that, by treating the support order in the original dissolution action as an order requiring the court's permission to modify, the trial court in this case should have discerned that the plaintiff's failure to file a motion to modify meant that he was not entitled to the credit for the alimony he had paid for seven years. Unlike the dissent, however, we do not interpret the order from the dissolution action to be self-executing *merely* to conform to the questionable award of a credit by the trial court in this case. Had the trial court characterized the order as self-executing and awarded a credit, as the dissent suggests was actually done, it would not have found the plaintiff in contempt. Obviously, the trial court did not recognize that by awarding the credit, it was functionally retroactively modifying the support order, probably because no one, including the defendant who was aggrieved by the credit, brought this matter to the court's attention. Likewise, the assertion of an improper retroactive modification of a support order was not raised before the Appellate Court or this court, despite the representation of both parties by well respected competent counsel. Therefore, we address only the issue properly before the court and conclude that, because the order in the dissolution action was not self-executing, the trial court acted within the proper exercise of its discretion in finding that the plaintiff was in contempt of court.

nothing to undermine the trial court's determination that the plaintiff's behavior was contemptuous. Accordingly, we affirm the finding of contempt.

## II

The authority of the trial court to award attorney's fees following a contempt proceeding is well settled. "Once a contempt has been found, § 46b-87 establishes a trial court's power to sanction a noncomplying party through the award of attorney's fees. See 31 S. Proc., Pt. 4, 1988 Sess., p. 1308, remarks of Senator Anthony V. Avallone (purpose of attorney's fees provision in § 46b-87 is 'to put an additional onus' on delinquent parties); see also *Ullmann* v. *State*, [supra, 230 Conn. 709]. Pursuant to § 46b-87, that sanction may be imposed without balancing the parties' respective financial abilities." *Dobozy* v. *Dobozy*, 241 Conn. 490, 499, 697 A.2d 1117 (1997). The award of attorney's fees in contempt proceedings is within the discretion of the trial court. *Friedlander* v. *Friedlander*, 191 Conn. 81, 86–87, 463 A.2d 587 (1983); *Champagne* v. *Champagne*, 43 Conn. App. 844, 850, 685 A.2d 1153 (1996); *Tatro* v. *Tatro*, 24 Conn. App. 180, 189, 587 A.2d 154 (1991). We conclude, under the circumstances of this case, that the award of attorney's fees constituted an abuse of discretion.

Our law regarding judicial discretion is equally well settled. "Judicial discretion is always a legal discretion, exercised according to the recognized principles of equity. . . . The action of the trial court is not to be disturbed unless it abused its legal discretion, and [i]n determining this the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did."

(Citations omitted; internal quotation marks omitted.) *DiPalma* v. *Wiesen*, 163 Conn. 293, 298–99, 303 A.2d 709 (1972). The trial court's discretion " 'imports something more than leeway in decision making and should be exercised in conformity with the spirit of the law and should not impede or defeat the ends of substantial justice.' " *Red Rooster Construction Co.* v. *River Associates, Inc.*, 224 Conn. 563, 575, 620 A.2d 118 (1993).

As part of its judgment dissolving the parties' seventeen and one-half year marriage, the trial court entered certain financial orders. See footnote 5 of this opinion. Thereafter, although the defendant in 1987, began to earn in excess of $25,000 annually as a teacher in the New York city school system, she never bothered to inform the plaintiff of this change in circumstances despite the fact that it would have entitled him, under the terms of the dissolution judgment, to seek a modification of alimony. Indeed, it was not until July, 1994, that the plaintiff, as a result of his request for information, first learned of this change in circumstances.

Believing that he was due a credit, the plaintiff began withholding alimony payments on August 7, 1994, and on November 1, 1994, he filed a motion for order to determine the extent of the credit owed him by the defendant. The defendant then moved to have the plaintiff held in contempt, and the plaintiff moved for a modification of alimony. During the hearing on the motions in June, 1995, the defendant asked the court to order the plaintiff to pay alimony while the motions were pending, which the trial court declined to do. Thereafter, the trial court determined that the defendant owed the plaintiff $57,765.28. Nevertheless, the trial court, on the basis of its determination that the plaintiff wilfully had failed to pay alimony beginning in August, 1994, awarded $15,067.50 in attorney's fees to the defendant. Under the circumstances of this case, and applying the appropriate standard of review to the

plaintiff's claim, we conclude that the award of such a significant sum constituted an abuse of discretion.

According to the dissolution decree, it was expressly contemplated that the defendant would engage in full-time employment, and that once her gross annual income from earnings exceeded $25,000, the amount of the alimony would be reduced.[8] For *seven* years, the defendant withheld information from the plaintiff that she clearly was obligated to report. Although he improperly chose to withhold alimony, his conduct was not entirely irrational or groundless. Indeed, as the trial court found, the defendant owed the plaintiff nearly $58,000, a significant sum of money.

We do not suggest that the defendant's conduct excused the plaintiff's noncompliance with the dissolution court's order. The fact that the plaintiff's position was ultimately vindicated, however, is not irrelevant to the question of whether the trial court properly awarded the defendant attorney's fees when her motion for contempt resulted, at least in part, from her own failure for over seven years to comply with the dissolution decree. Although the decision to award attorney's fees rests within the court's discretion, this discretion must be exercised according to equitable principles. See *DiPalma* v. *Wiesen*, supra, 163 Conn. 298–99. "It is a fundamental principle of equity jurisprudence that for a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with 'clean hands.'. . . The clean hands doctrine is applied not for the protection of the parties but for the protection of the court. . . . It is applied not by way of punishment but on considerations that make for the advancement of right and justice." (Citations omitted.) *Pappas* v. *Pappas*, 164 Conn. 242, 245–46, 320 A.2d

---

[8] The trial court relied on this change in the defendant's circumstances to reduce her annual alimony income from $35,000 to $15,000.

809 (1973). We cannot ignore the fact that it was the defendant's conduct that precipitated the plaintiff's behavior and resulted in the motions that he filed and prevailed upon at his own expense. The defendant in this case must be charged with the knowledge that the income she had been earning for several years did not entitle her to the level of alimony she had been receiving. She nevertheless failed to inform the plaintiff of her change in circumstances. In awarding the substantial amount of attorney's fees to the defendant, the court has rewarded her behavior. This cannot be said to serve the interests of "right and justice." Id., 246.

Unlike *Friedlander* and *Tatro*, in which the reviewing courts concluded that the trial court did not abuse its discretion in awarding attorney's fees to a party because he or she had been forced to go to court many times to assert his or her rights; *Friedlander* v. *Friedlander*, supra, 191 Conn. 86–87;[9] *Tatro* v. *Tatro*, supra, 24 Conn. App. 189–90; the defendant in this case filed her motion for contempt only after the plaintiff had filed his motion for an order alerting the court to her seven year lapse in reporting income. We also find it significant that when, during the hearing on all the motions, the defendant requested that the court order the plaintiff to pay her alimony while the motions were pending, the court denied the defendant's request. Certainly, at that stage of the proceedings, the plaintiff's conduct did not constitute a wilful disregard of the dissolution court's order.

The plaintiff's transgression in this case was of limited duration. He stopped paying alimony in August, 1994, sought court intervention first in November, 1994, and then again in January, 1995, and obviously would

---

[9] In *Friedlander* v. *Friedlander*, supra, 191 Conn. 86–87, the plaintiff had to file five contempt motions in order to enforce an earlier court order. Three of those motions resulted in fines, but nevertheless, the defendant continued to violate the court's orders. An award of counsel fees of $300 was upheld. Id., 87.

have made the requisite payments during the pendency of the motions had the court granted the defendant's request. The trial court determined that the plaintiff had not acted in bad faith.

Under the totality of these circumstances, we conclude that the trial court's award of attorney's fees of $15,067.50 constituted an abuse of discretion. The defendant initially asked for attorney's fees in the amount of $33,731.25 and a sheriff's fee for service of $67.60, based upon "computer printouts for all services rendered and the time spent on these motions between August 11, 1994 through August 30, 1995." The trial court determined that the fees were reasonable and awarded attorney's fees of $15,067.50, plus the sheriff's fee. There was no showing by the defendant, however, what portion of the services had been generated in connection with the plaintiff's motions and what portion was attributable to the issue of contempt. Even after this evidentiary lapse was brought to the court's attention in the plaintiff's "motion to reopen and set aside, clarify, correct, articulate and reargue," the trial court merely reiterated that it found the attorney's fees reasonable. In the absence of any evidentiary relationship to the efforts expended by the defendant's counsel on the issue of contempt, we will not presume that the plaintiff was ordered to pay the defendant's attorney's fees solely in connection with the contempt motion, particularly where the facts underlying the contempt were not in dispute. At most, the defendant would be entitled to those attorney's fees incurred for the time needed to establish the allegations of contempt, which, from our review of the record, was not considerable.

The judgment of the Appellate Court is affirmed as to the issue of contempt and reversed as to the issue of attorney's fees and the case is remanded to the Appellate Court with direction to remand the case to the

trial court for a new determination of the amount of attorney's fees to be awarded to the defendant.

In this opinion CALLAHAN, C. J., and BORDEN, NORCOTT and PALMER, Js., concurred.

BERDON, J., with whom, MCDONALD, J., joins, dissenting. The majority, by affirming the trial court's finding of contempt against the plaintiff, Stephen C. Eldridge, for failing to comply with an alimony order, condones the invocation by the defendant, Phyllis Eldridge, of the court's power of contempt as a trial tactic. In my view, the plaintiff's failure to pay the defendant alimony under the circumstances of this case did not amount to contempt of court.

The clear language of the alimony order in this case provides that it was self-executing—that is, the plaintiff could reduce his alimony obligation to the defendant without returning to court. The trial court memorandum of decision by *Hon. Irving Levine,* judge trial referee, and the judgment file of November 14, 1983, provide that "[t]he plaintiff shall pay to the defendant as periodic unallocated alimony and support for herself and the minor children the sum of $65,000 per year in twelve equal monthly installments on the tenth day of each month beginning November 10, 1983. On the eighteenth birthday of each child, the annual sum *shall* be reduced by $15,000." (Emphasis added.) It further provides "[o]ne half of the amount by which [the defendant's] earnings exceed $25,000 *shall* be deducted from the periodic unallocated alimony and support hereinbefore awarded." (Emphasis added.) This order with respect to earnings, like the order in the judgment reducing the plaintiff's unallocated alimony and support obligation when each child reached the age of eighteen, contains essentially the same mandatory language that it "shall" be reduced. No one questions that the order with

respect to child support was self-executing upon the occurrence of the listed event, and, likewise, it should be beyond question that the order reducing the unallocated alimony and support is self-executing when the defendant's annual earnings exceed $25,000. Accordingly, the plaintiff, who suspended his periodic alimony payments in August, 1994, after learning that the defendant's earnings exceeded $25,000, was not in contempt because his credit for overpayment exceeded the alimony that was due to the defendant.

The majority mistakenly relies on dicta from the Appellate Court's decision in *Eldridge* v. *Eldridge*, 4 Conn. App. 489, 493–94, 495 A.2d 283 (1985), that the order was not self-executing in order to conclude that the plaintiff could not reduce his periodic alimony payments to the defendant until he sought judicial modification of the judgment. The Appellate Court stated that the defendant's "entitlement to alimony under the initial award would be subject to modification upon motion by the plaintiff" when the defendant's earnings exceeded $25,000. Id., 494. The issue before the Appellate Court, however, was not whether the order was self-executing, but, rather, whether the trial court had the power to preclude modification of the order in the future.[1] Id. The Appellate Court did not have the authority on appeal to change the clear language of the order when that was not the issue, nor did it attempt to do so. Reliance, therefore, on the Appellate Court's characterization of the order to conclude that the plaintiff disobeyed a court order by not filing a motion for modification before he suspended the alimony payments is misplaced. "[W]here parties under a mandatory judgment could be subjected to punishment as contemnors for violating

[1] The Appellate Court identified the issue as follows: "The third claim of error raised by the plaintiff is that the trial court erred in circumscribing the discretion of a later court in determining what constitutes a substantial change of circumstances." *Eldridge* v. *Eldridge*, supra, 4 Conn. App. 493.

its provisions, such punishment should not rest upon implication or conjecture, but the language . . . imposing [such] burdens [should be] specific and unequivocal so that the parties may not be misled thereby." (Internal quotation marks omitted.) *Blaydes* v. *Blaydes*, 187 Conn. 464, 468, 446 A.2d 825 (1982).

Moreover, the facts underlying this appeal clearly establish that the plaintiff did not act in contempt of court. It came to the attention of the plaintiff in July, 1994, that, since 1987, the annual earnings of the defendant exceeded $25,000, a fact she never disclosed to the plaintiff. The plaintiff, in a letter to the defendant dated July 10, 1994, advised her that he would be reducing his periodic alimony payments and that he needed copies of her tax returns or other information so he could establish the amount of his overpayment.[2] The

---

[2] "Phyllis M. Eldridge
15 Vineyard Lane
Westport, Conn. 06880

July 10, 1994

Dear Phyllis,

Pursuant to our divorce decree, alimony payments to you are automatically reduced by one-half of the excess of your earnings over $25,000.

In view of the fact that you have not volunteered to inform me of the amount of your earnings, I have in good faith reasonably estimated that your present earnings are approximately $50,000 per annum. Thus, my alimony obligation is automatically reduced from $35,000 to $22,500 per annum, or from $2,916.67 to $1,875 per month. Enclosed is my check in the amount of $1,875 for July.

Please advise me (with supporting documentation) of the correct exact amount of your income for 1994 (including the remainder of the year). Only then will I be able to refine the calculation and I will immediately remit a balance due to you, if any.

Please provide me with copies of your tax returns for any prior year in which your earnings exceeded $25,000.

For your information, I am and have been unemployed for several months.

Respectfully,

Stephen C. Eldridge
My Way
Weston, Ct. 06883"

defendant responded, on July 29, 1994,[3] that she anticipated her "earnings for 1994 would be approximately" $35,415 and that the plaintiff was "free to make the necessary computations and adjustments consistent with the provisions of the [judgment] for the year 1994." The defendant also explained that it was her position that, because she had financially contributed to the educational costs of the children, the plaintiff was not entitled to any alimony adjustments for prior years when her earnings exceeded $25,000.[4] On August 7, 1994, the plaintiff, after receiving the defendant's consent to make the necessary adjustments in his periodic alimony payments, suspended the alimony payments to the defendant.

---

[3] "July 29, 1994

Mr. Stephen C. Eldridge
My Way
Weston, CT 06883

Dear Stephen:

I have received your July 10 letter.

First of all, you are and have been aware that I have been teaching for many, many years. In fact, the only time you raised the issue is after the children's education has been completed. You and I have shared the educational expenses for your children equally over these many years. The reason that I was able to divide those expenses equally with you was because I was teaching and it was implicit that such contributions by me were in lieu of you receiving any credits on the payments of tax deductible alimony. Accordingly, I relied upon the same in making those voluntary and significant payments for our children's education, which, according to my records, total $108,607.75.

Our children's education is now almost concluded. My gross annual earnings in 1993 was $35,415. I anticipate my earnings for 1994 would be approximately the same. You are free to make the necessary computations and adjustments consistent with the provisions of the agreement for the year 1994.

Very truly yours,

Phyllis M. Eldridge"

[4] The trial court rejected the defendant's claim as follows: "The court finds no agreement between the parties as to payment of these college expenses nor did the plaintiff ever agree to waive his alimony credit. The court finds the defendant paid one half of two children's college expenses voluntarily . . . ."

On November 1, 1994, the plaintiff filed with the trial court a motion for order requesting that the trial court order the defendant to disclose her earnings since January 1, 1984, and that the trial court determine the extent to which the defendant's earnings exceeded $25,000 for each of those years. In accordance with the old adage—the best defense is a good offense—the defendant, on December 13, 1994, filed a motion for contempt requesting that the trial court hold the plaintiff in contempt for suspending alimony payments for which the defendant had given her written consent. After a hearing, the trial court, *Petroni, J.*, on November 13, 1995, specifically found that the defendant's earnings over the previous nine years exceeded the $25,000 threshold in the alimony order by a total of $57,765.78. The trial court further found that the plaintiff should have paid the defendant from the date he terminated alimony payments the sum of $47,708.30, thereby determining that there was a net overpayment of $10,057.48 by the plaintiff.

The trial court's underlying finding that the plaintiff was entitled to a credit of $57,765.78 is consistent with the characterization that the order was self-executing and is inconsistent with the determination that it was an order requiring modification. First, the trial court's own interpretation of Judge Levine's order was that the reduction was mandatory. The trial court found that "Judge Levine clearly stated that when the defendant's earnings from employment exceed $25,000, one half of that amount *shall be deducted* . . . from the alimony order."[5] (Emphasis in original.) Accordingly, the plaintiff was entitled to deduct that amount without seeking

[5] The trial court held: The defendant "also knew or should have known the alimony order provided a one-half credit to the plaintiff when her earnings exceeded $25,000 from her full-time employment. The court has the duty to interpret Judge Levine's order as a matter of law. It finds an alimony credit of $57,765.78 in the plaintiff's favor. Judge Levine clearly stated that when the defendant's earnings from employment exceed $25,000 one half

the court's permission. Second, if the order was not self-executing, the plaintiff's failure to file a motion for modification of the alimony order until January 5, 1995, would have meant that his alimony obligation for the years from 1987 to the end of 1994 remained at its original level of $35,000. Thus, under those circumstances, the plaintiff would not have overpaid the defendant. Third, the legislature and this court have made it clear that a trial court has no jurisdiction retroactively to modify an alimony order. See General Statutes § 46b-86 (a) ("[n]o order for periodic payment of permanent alimony or support may be subject to retroactive modification"); see, e.g., *Sanchione* v. *Sanchione*, 173 Conn. 397, 405–406, 378 A.2d 522 (1977) (trial court should not have given retroactive effect to its modification of order of weekly alimony). If the order was not self-executing, the earliest date on which the plaintiff could have received the benefit of a modified alimony obligation under the 1983 judgment was January 5, 1995, the date he filed his motion for modification. See General Statutes § 46b-86 (a) ("court may order modification with respect to any period during which there is a pending motion for modification of an alimony . . . order from the date of service of notice of such pending motion"). I can conclude only that the trial court awarded the plaintiff a credit for seven years of "overpayment" because it recognized that the order was self-executing; otherwise, most of the $57,765.78 credit would constitute a retroactive modification of the alimony order over which the court has no jurisdiction.

Furthermore, even if the alimony reduction provision in the judgment could be construed as not being self-executing, I would still conclude that the trial court's finding of contempt was an abuse of discretion and should be vacated. A party's "good faith dispute or

of that amount *shall be deducted* . . . from the alimony order." (Emphasis in original.)

legitimate misunderstanding" of a support obligation may excuse a contempt. *Jenks* v. *Jenks*, 39 Conn. App. 139, 142, 663 A.2d 1123 (1995). "The contempt remedy is particularly harsh . . . and may be founded solely upon some clear and express direction of the court. . . . One cannot be placed in contempt for failure to read the court's mind." (Citations omitted; internal quotation marks omitted.) *Blaydes* v. *Blaydes*, supra, 187 Conn. 467. In the present case, the plaintiff made complete and timely alimony payments from the date of the judgment through August, 1994. Indeed, the trial court determined, on the basis of the plaintiff's consistent record of making alimony payments, that he had not acted in bad faith. The plaintiff suspended his alimony payments to the defendant only after he had discovered that the defendant's earnings exceeded $25,000, and after he had received her permission to adjust periodic payments in 1994.[6] The plaintiff filed his motion for an order to have the court determine the status of an overpayment before the defendant filed her motion for contempt. Moreover, the plaintiff testified in the trial court that he had consulted with his attorney before he decided to stop making alimony payments in August, 1994. Under these circumstances, the trial court's finding that the plaintiff was in contempt—a finding of deliberate defiance of a court order—was not justified.

Furthermore, it would appear to me that the majority confuses civil contempt with criminal contempt when analyzing the trial court's order of contempt. "[A] criminal contempt is conduct that is directed against the dignity and authority of the court. In contrast, civil contempt is conduct directed against the rights of the opposing party." *Board of Education* v. *Shelton Education Assn.*, 173 Conn. 81, 85, 376 A.2d 1080 (1977). "[I]t is the nature of the relief itself that is instructive in

---

[6] See footnotes 2 and 3 of this dissent.

determining whether a contempt is civil or criminal."
*Ullmann* v. *State*, 230 Conn. 698, 709, 647 A.2d 324
(1994). "A contempt is considered civil when the pun-
ishment is wholly remedial, serves only the purposes
of the complainant, and is not intended as a deterrent
to offenses against the public." *Board of Education* v.
*Shelton Education Assn.*, supra, 85. The majority argues
that this is a case of civil contempt—which means that
the relief ordered by the trial court should be designed
to coerce the payment of alimony. *Mays* v. *Mays*, 193
Conn. 261, 266, 476 A.2d 562 (1984). The plaintiff, how-
ever, did not owe the defendant any alimony. Instead,
as the trial court found, after crediting the plaintiff
with his overpayment, the defendant owed the plaintiff
$10,057.48. In short, the finding of contempt did not
serve only the purposes of the complainant, but, rather,
was designed in part by the trial court to punish the
plaintiff.

"In criminal contempt the sanction is punitive in
order to vindicate the authority of the court." (Internal
quotation marks omitted.) Id. "Authority [of the court]
can be and has been said to mean the [r]ight to exercise
powers; to implement and enforce laws; to exact obedi-
ence; to command; to judge. . . . [It is] [o]ften synony-
mous with power." (Internal quotation marks omitted.)
*Banks* v. *Thomas*, 241 Conn. 569, 587, 698 A.2d 268
(1997). The majority argues that the trial court was
entitled to hold the plaintiff in contempt because to
exonerate him "would be an undue inducement to liti-
gants' exercise of self-help." In other words, the trial
court could punish the plaintiff in order to deter other
litigants with alimony obligations from exercising self-
help in contravention of the court's authority. This con-
tempt order can only be classified as criminal,[7] and,
therefore, must be reversed.

---

[7] The trial court's intention to punish the plaintiff by awarding attorney's
fees becomes clear upon reviewing its memorandum of decision. The trial

Finally, the majority's decision that the trial court's award of attorney's fees as punishment for the contempt was an abuse of discretion is totally inconsistent with its decision to uphold the trial court's finding of contempt. The majority recognizes that it would not serve the interest of " 'right and justice' " to award substantial attorney's fees to the defendant, the person whose conduct "precipitated the plaintiff's behavior and resulted in the motions that he filed and prevailed upon at his own expense." Likewise, holding the plaintiff as a contemnor under the circumstances of this case would not serve the interest of " 'right and justice.' "

Accordingly, I dissent.

court stated: "The plaintiff knew or should have known that he was not entitled to terminate the order unilaterally himself. The plaintiff is a college graduate, and the court found him to be an intelligent individual with a successful career as a certified public accountant for many years. It is elementary that court orders must be complied with until they are modified by a court or successfully challenged. . . . The court finds the plaintiff in wilful contempt of the alimony orders." (Citation omitted.)

The majority also recognizes that the trial court awarded attorney's fees to punish the plaintiff. At the end of part II of the majority opinion, in which it reverses the judgment of the Appellate Court regarding the amount of the award of attorney's fees, the majority concludes that because the amount awarded was substantially in excess of the amount necessary to compensate the defendant, it "will not presume that the plaintiff was ordered to pay the defendant's attorney's fees solely in connection with the contempt motion . . . ." In other words, the excess attorney's fees awarded to the defendant must have been, according to the majority, punishment.