[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE PLAINTIFF'S POST-JUDGMENT MOTION FOR CONTEMPT (#106)
This memorandum of decision addresses the plaintiff's Post-Judgment Motion for Contempt, dated September 5, 2000 (#106). The plaintiff claims that the defendant failed to pay certain debts within two years of the date of dissolution, in violation of court orders. This court finds that the defendant has not complied with these court orders but, for the reasons explained below, is not in contempt of court. Nonetheless, the court finds, in the interests of justice and to protect the integrity of the court's orders, that it should issue remedial orders detailed below.
The court (Blue, J.) dissolved the parties' sixteen-year marriage on August 24, 1998. The court found that the parties' contemporaneous written separation agreement was fair and equitable, and the court incorporated that agreement into the judgment by reference. Article III of that agreement provided that within two years of the dissolution the defendant would: (1) pay two federal tax liens totaling $129,442.26 on the wife's real property and a mortgage of $40,000 on that property; (2) obtain written releases of the wife from those debts; and (3) hold her harmless thereon. The plaintiff has filed this motion for contempt regarding the defendant's failure to comply with that order. The court heard evidence on the motion on June 28, 2001. Thereafter counsel for both parties submitted written briefs and presented oral argument to the court. The court has carefully considered all of the evidence, including the exhibits and testimony presented, according to the standards required CT Page 13954 by law.[1] For the following reasons, the court denies the motion for contempt.
The undisputed evidence offered at the hearing on the motion for contempt established that the defendant was the founder of a business known as State Welding and Fabricating, Inc. (hereafter referred to as "the business"). For many years he was its chief executive officer. The evidence clearly established that all three debts referred to in Article III resulted from debts of that business. The two federal tax liens resulted from the business's failure to pay various taxes when due. The bank mortgage was a loan the defendants mutually took out to pay certain business debts.
The evidence also established that sometime before the divorce, in the late 1980s or early 1990s, the defendant sold half his interest in the business and 1996 he resigned from his position managing the business. As of the time of the divorce, the business was in chapter eleven bankruptcy proceedings and he had no role in operating the business or direct control over the business.
During the dissolution proceedings, the parties appeared pro se, but they did contact an attorney to put the separation agreement they reached into writing. The court finds the defendant's testimony credible that he initially believed the agreement for him to extinguish these debts would impose no time deadline on his doing so. He first became aware that the attorney who drafted the written agreement had included a two-year period for him to do so on the day of the divorce. He knowingly agreed to that term being included in the divorce judgment because he intended to use his best efforts to get the debt paid off within the next two years.
The evidence also established that at the time of the dissolution, the defendant had no present or apparent future ability to comply with the obligation to pay off these three debts. He had limited income (only $20,400 gross income in 1998), only a few assets, and no direct control over the business. Moreover, after the divorce, his financial condition did not change substantially. In 1999 his gross income was only $18,674 and in 2000 was $26,366. His only significant assets now are a one-quarter interest worth $20,000 in real property at 224 Bassett Street in New Haven that he inherited from his parents in the early 1980s; a one-third interest worth $13,000 in a small airplane; his half-ownership share in the business; and a sole proprietorship in an unincorporated business venture he began in 1997, MFP Detailing, that generates him weekly gross income of $700 and net income of $459. The Bassett Street property generates rental income, of which his share of net weekly proceeds is $20. CT Page 13955
The evidence also clearly established that the defendant has failed to comply with the court order requiring him to extinguish these debts within two years, has not obtained written releases of the plaintiff from these debts, and has not held her harmless on those debts. All three liens remain on the property, and the defendant has neither been released from liability nor held harmless therefrom. Because of the defendant's noncompliance, the plaintiff suffered the distress, inconvenience and expense of defending against a foreclosure proceeding brought by the bank holding the mortgage. The liens prevented her from obtaining financing for a new roof the house needed, and water damage inside the house resulted.
The question is, however, does the defendant's failure to comply with the court's order constitute contempt? As the court held in Marcil v.Marcil, 4 Conn. App. 403, 405, 494 A.2d 620 (1985), "The fact that the order had not been complied with fully, however, does not dictate that a finding of contempt must enter. It is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order." "The inability of the defendant to obey an order of the court, without fault on his part, is a good defense to a charge of contempt." Turgeon v. Turgeon,190 Conn. 269, 283, 460 A.2d 1260 (1983). The burden of establishing inability to comply with the court's order rests on the person shown not to be in compliance: "[t]he contemnor must establish that he cannot comply, or was unable to do so." Eldridge v. Eldridge, 244 Conn. 523,532, 710 A.2d 757 (1998), citing Bunche v. Bunche, 36 Conn. App. 322,325, 650 A.2d 917 (1994).
The court finds that the defendant was financially incapable of complying with the court's order either at the time of the dissolution or any time since. Neither his income nor resources available from his assets were then or have since been adequate to pay off these debts. He has, however, engaged in several good faith efforts to comply with the obvious intent of the court order, which was to free the property of these liens and secure the plaintiff's release from any indebtedness. These include efforts to regain control of the business and legal proceedings in federal court disputing part of the IRS liens for taxes not paid after the plaintiff claims he was no longer running the business.
Moreover, the current management of the business has been making steady efforts to reduce the indebtedness on the two properties. It has an agreement with the Internal Revenue Service under which the business will have paid off the IRS liens in three years and is also paying off the mortgage lien; both have been reduced from their previous amounts by a total of approximately $80,000. CT Page 13956
The court thus finds that the defendant, though not having complied with the court's order, has established a defense of being unable, without fault on his part, to do so. Accordingly, the court declines to hold him in contempt. The court intends, however, to enter the following additional orders to protect the integrity of the prior court orders here; Clement v. Clement, 34 Conn. App. 641, 646 (1994):
 1. For a period of months in late 1998 and 1999, the defendant paid the IRS one hundred dollars per month. He testified at the hearing that these payments went toward reducing the IRS tax liens on the plaintiff's real property, while the plaintiff raises valid questions in her brief as to that claim. The defendant offered into no evidence no documentation from the IRS to corroborate his claim. Regardless, however, those payments show an ability to make at least nominal payments toward reducing the amount of the tax liens. While such an amount is relatively insignificant compared with the overall indebtedness, they could, if resumed and applied to the tax lien indebtedness, accelerate the date on which the liens will be extinguished. Accordingly, the court orders the defendant to make payments of one hundred dollars per month toward the IRS indebtedness until the IRS tax liens are released from the plaintiff's property, and thereafter to make such payments toward the mortgage until that is released as well.
 2. The court orders the defendant to sell his interest in the airplane and Bassett Street rental property, or to obtain loans in an amount reasonably equal to his financial interest in those properties, and to apply the sums he derives therefrom to extinguishing the IRS liens and mortgage; or, in the alternative, to utilize his interest in those properties to secure the IRS liens if by doing so he is able to effectuate release of the IRS liens from the plaintiff's property.
 3. The court orders the defendant to provide the plaintiff the following on a quarterly basis beginning December 1, 2001: CT Page 13957
a. Financial affidavits detailing his income, assets, and expenses; and
 b. Documentation of payments made to the IRS and bank to reduce the tax liens and mortgage.
 4. Because the defendant failed to comply with the court's order, the plaintiff incurred costs to defend against a mortgage foreclosure and in seeking an "innocent spouse" exception from the IRS. This result undermines the integrity of the original court order. To preserve the integrity of that order, the court orders the defendant to reimburse her for the cost of those legal fees. The plaintiff's testimony as to her legal expenses combined the attorney's fees she incurred for these earlier matters with her counsel fees in the present proceeding, which the court, for reasons stated in the margin, declines to award.[2] The court therefore reopens the hearing in this matter for evidence as to the expenses the plaintiff incurred in defending the mortgage foreclosure and seeking the innocent spouse exception from the IRS. If both parties concur, that evidence may be submitted by way of affidavit; otherwise, the clerk will schedule a supplemental hearing on this matter.
SO ORDERED.
Frazzini, JUDGE