[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter involves a post-judgment motion for modification filed by the defendant, and a motion for a finding of contempt initiated by the plaintiff Both motions were heard simultaneously at a hewing which was held during October 2001. Both the plaintiff and the defendant testified during the proceeding, and each was represented by counsel. At the conclusion of the hearing, the plaintiff and the defendant were asked to submit memoranda of fact and law. On November 14, 2001, the defendant filed a pro se appearance in lieu of his attorney's appearance. The plaintiffs memorandum was received on November 28, 2001 and the pro se defendant's brief was submitted the following day. The court has carefully considered all of the evidence that was presented at the hearing, as well as the oral and written arguments of the parties. The court finds that the facts referred to below were proven by a preponderance of the evidence at hearing.
 FACTUAL FINDINGS
The parties' marriage was dissolved by the court (Brennan, STR) on January 13, 1995. The judgment, which incorporated the parties' written agreement, provided that the plaintiff and the defendant would share joint legal custody of the three minor children. The children's primary place of residence was to be with the plaintiff. A comprehensive parental access schedule that had been agreed to by the parties was also incorporated into Judge Brennan's decree.
At the time of dissolution, the defendant was ordered to pay the plaintiff child support at the rate of $330 per week. The financial affidavit submitted by the defendant to the court on January 13, 1995 indicated that his net weekly wages were $747.03. The plaintiffs financial affidavit reflected net wages of $317 per week.
The child support provisions of the judgment were subsequently modified by the court (Rubinow, J.) on April 16, 1997. That order, which was also based on the parties' signed, written agreement, provided that a cost of living adjustment (COLA) based on the National Consumer Price Index (CPI) would be annually applied to the existing child support order of $330 per week. The stipulation, which was approved by the court on April 16, 1997, stated as follows:
 "There shall be no modification of the term of the current weekly child support order. However, the parties agree to add a provision to the current support order which calls for a cost of living CT Page 822 adjustment each year. The child support may increase on March 1, 1998 and on March 1 of each succeeding year in accordance with the percentage increase of the National Consumer Price Index (CPI) published by the United States Bureau of Labor Statistics using the most recent figures available 30 days before the March 1st date. Therefore, commencing March 1, 1998, the Defendant shall pay to the Plaintiff, as additional support, an amount proportional to the rise in the CPI between March 1, 1997 and February 1, 1998, and each March 1st thereafter."
Based on the forgoing formula, the parties later agreed that the defendant would pay the plaintiff child support at the rate of $346 per week during the period between March 1, 1998 and February 1, 1999.
When the parties presented their modification agreement to the court on April 16, 1997, they filed sworn financial affidavits with the court. At that time, the defendant's net weekly income was $806 per week. This figure was calculated using a bonus that the defendant characterized as being "unusually high." The plaintiffs net weekly wages from her two jobs then totaled approximately $280. That figure did not include the money that the plaintiff received from the defendant in child support and day care contribution payments.
On September 17, 1999, the plaintiff and the defendant entered into another written agreement concerning child support. The agreement was drafted by the defendant and was signed by each of the parties before a notary public, who took their respective acknowledgments. The parties, and the minor child, were not represented by legal counsel when this agreement was prepared and executed. The written agreement was never submitted to, nor approved by, the court. In the document, the plaintiff and defendant agreed that the defendant would pay the plaintiff child support of $1,300 per month until March, 2000, before another cost of living adjustment was made.
The agreement was requested and written by the defendant. Although the plaintiff claimed at hearing that the defendant is a controlling person, the court finds that the plaintiff voluntarily signed the September 17, 1999 agreement, and was not under duress when she did so.
The defendant also claimed at hearing that he later entered into an oral agreement with the plaintiff. He maintained that the parties stipulated that the child support payments would continue at the rate of $1300 per month until March 2001, and that the implementation of another cost of living adjustment would be further delayed until then. The CT Page 823 plaintiff denied tat she ever agreed to this. However, the evidence at hearing established that the defendant paid child support to the plaintiff in the amount of $1300 per month from approximately September 1999 through March 2001. During this period of time, the plaintiff accepted the offered child support payments without initiating court action to compel enforcement of the 1997 order. Although the court is unable to determine if the plaintiff orally agreed to defer the COLA payments for the additional year, it does find that she tacitly acquiesced to the defendant's proposal that the next cost of living increase would be made in March 2001.
On April 11, 2001, the defendant filed the instant motion to reopen the judgement and modify child support. In it, he alleged that his access to the minor children had increased since the date of judgment. The defendant claimed that this constituted a "substantial change in circumstances" which warranted a decrease in the amount of his child support payments. In the motion, the defendant also stated:
 "On or about March 1997, the parties entered into a written stipulation which increased the Defendant's child support obligation to $346 per week based on the cost of living increase each year."
The defendant did not mention his out-of-court agreements, or the fact that he had been paying child support of $1,300 per month (without COLA increases) since September 1999, in that motion to modify.
On May 10, 2001, the plaintiff filed her motion for contempt. In it, she referenced the April 16, 1997 order that child support was to be adjusted annually based on the increase in the Consumer Price Index. In the contempt motion, the plaintiff claimed that the defendant "unilaterally reduced the child support to [$]1300." The plaintiff made no mention of the September 17, 1999 agreement in her contempt motion.
 DISCUSSION
The first issue which this court must determine is whether or not the parties' 1999 notarized agreement legally modified the court's existing child support order. The court concludes that it did not.
Connecticut General Statute Section 46b-86 provides in relevant part that: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party, or upon a CT Page 824 showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a
. . ." (emphasis added). The court interprets this statutory language to mean that a child support order may only be modified by order of the court.
This analysis is also supported by Connecticut case law. In Lownds v.Lownds, 41 Conn. Sup. 100, 551 A.2d 775 (1988), the court (Freed, J.) dealt with circumstances similar to the ones in this case. Judge Freed ruled that "[a]lthough the parties have a statutory right to enter into agreements affecting their children, a trial court has the power to reject or modify such agreements if it determines that such agreements are not equitable . . . It is the duty of the court to enter such orders as it believes are in the best interests of the children, and it is a responsibility that cannot be delegated or abrogated by agreement of the parties." (internal citations omitted). Lownds v. Lownds, supra, p. 105.
Parties proposing a child support modification must submit the proposed order to the court for its review and approval. Lownds v. Lownds, supra, p. 105-106; Brock v. Cavanaugh, 1 Conn. App. 138 (1984); Ginsberg v.Ginsberg, 1991 WL 44304, Steinberg, J. (March 20, 1991).
Because the September 17, 1999 written agreement was never approved by the court, the court finds that the parties' stipulation did not legally modify the child support order issued in 1997.
The defendant has also raised the defenses of laches, equitable estoppel and waiver in this case. For the reasons set forth below, the court does not find those equitable defenses to be applicable.
"Laches consists of two elements. First, there must have been a delay that was inexcusable, and second, that delay must have prejudiced the defendant . . . Lapse of time, alone, does not constitute laches. It must result in prejudice to the defendant as where, for example, the defendant is led to change his position with respect to the matter in question." (internal citations omitted, internal quotation marks omitted). LaSalleNational Bank v. Shook, 67 Conn. App. 93, 98-99 ___ A.2d ___ (2001).
The agreement signed by the parties in September 1999 provided that the COLA adjustments would not resume until March 2000. Although the parties differ about whether or not the plaintiff agreed to postpone the COLA increase until March 2001, the court has found that the plaintiff passively acquiesced to that deferment. Nevertheless, the court does not find that the length of time in question was inexcusable, or excessive. The plaintiffs agreement to postpone the implementation of the next cost of living adjustment did not signal an abandonment of her rights under CT Page 825 the 1997 court order. The court finds that the plaintiff agreed to the grace period based on her understanding that the defendant would comply with the COLA provision at a specified future date. When the defendant rescinded his agreement to do so by filing the instant motion to modify, the plaintiff reverted to the position that the 1997 order should be fully enforced. Under the facts and circumstances of this case, the court cannot conclude that the period of forbearance by the plaintiff constituted an unreasonable or inexcusable delay.
The court also does not find that the plaintiff caused the defendant to change his position. The defendant actively solicited the 1999 written agreement. The plaintiff was willing to postpone, but not eliminate, the annual COLA increase. Because the defendant subsequently abandoned his promise that the COLA would be implemented in March 2001, the plaintiff regarded the parties' 1999 written agreement as a nullity. In light of these facts, the court finds that the plaintiff did not lead the defendant to change his position to his detriment.
Finally, the court finds that the defendant did not establish that he has been prejudiced. The court has carefully considered all of the defendant's evidence and arguments on this issue, but concludes that he has not proven injury caused by the plaintiffs delay in seeking enforcement of the court's 1997 order.
For all of the forgoing reasons, the court finds that the plaintiffs attempt to seek recovery of the child support sums due her under the 1997 order is not barred by the doctrine of laches.
The defendant has also invoked a claim of equitable estoppel. "Estoppel has its roots in equity and stems from the voluntary conduct of a party whereby [the party] is absolutely precluded, both at law and in equity, from asserting rights that might otherwise have existed . . . as against another person, who has in good faith relied upon such conduct, and who has been led thereby to change his position for the worse . . . We [have] recognized that estoppel always requires proof of two essential elements: the party against whom estoppel is claimed must do or say something calculated to induce the other party to believe that certain facts exist and to act upon that belief and the other party must change its position in reliance on those facts, thereby incurring some injury." (internal citations omitted, internal quotation marks omitted). UnionCarbide v. Danbury, 257 Conn. 865, 872-873, 778 A.2d 204 (2001).
The defendant asserted in his post-hearing memorandum that ". . . the plaintiff is equitably estopped from asserting her claim of arrearage because by voluntarily entering a modification agreement with the defendant, she led the defendant to believe that he was no longer CT Page 826 responsible for that amount. Believing that both parties entered into this agreement under good faith, the defendant changed his position in relation to this matter." (Brief of Defendant, Page 3). The court is unpersuaded by this argument.
As noted above, the 1999 written agreement was importuned by the defendant and provided for a postponement of the COLA increase in the defendant's child support payments. The plaintiffs concessions to delay the cost of living adjustments were predicated on the defendant's promises that they would resume in 2000, and subsequently, in 2001. The plaintiff never agreed to a total eradication of the COLA provision. The defendant knew that the grace period which he requested was granted in consideration of his agreement to augment the child support payments with a cost of living increase by March, 2001. He did not abide by that condition. Hence, the defendant cannot use an agreement that he negotiated and later repudiated to support a claim that he was misled by the plaintiff into believing that he was absolved from abiding by the terms of the 1997 order.
Here, too, the court finds that the defendant did not prove that conduct of the plaintiff prompted him to change his position to his detriment, and he did not prove that he has been injured. Accordingly, the court finds that the plaintiff is not equitably estopped from asserting her claims to past due child support under the 1997 order.
The defendant's third equitable defense is based on the legal theory of "waiver." "Waiver is the intentional relinquishment of a known right and intent to relinquish it." (internal citations omitted). Dichello v.Holgrath Corporation, 49 Conn. App. 339, 349, 715 A.2d 765 (1998).
The defendant contends that the plaintiff waived her right to claim the increased child support amounts ordered in 1997 when she agreed to defer implementation of the cost of living adjustments.
However, this court does not have to decide the issue of whether or not the plaintiffs acceptance of lower child support payments during the time period in question amounted to a waiver. Connecticut case law is clear that children have a right to child support that is independent of the rights of their parents. Guille v. Guille, 196 Conn. 260, 492 A.2d 175
(1985).
The minor children were not represented by counsel when the 1999 agreement was negotiated and executed. Furthermore, that agreement was never ordered by the court, which had the duty to inquire about whether or not the proposed modification was in the children's best interests. Because neither the plaintiff nor the defendant could consent to a waiver CT Page 827 of the children's independent right to child support, and because counsel for the children, and the court, never approved the reduction, the claim of a valid waiver in this matter must fail.
The plaintiff alleges that the defendant is in contempt of the 1997 court order that he make annual cost of living adjustments to the child support payments. "In order to constitute contempt, a party's conduct must be willful." Eldridge v. Eldridge, 244 Conn. 523, 529, 710 A.2d 757
(1998). "His willfulness, if any, may be negated by an inability to pay or a mistaken belief that he was not obligated to pay the court order because he erroneously believed that the order had been modified." (internal citation omitted). Lownds v. Lownds, supra, p. 108. "It is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order." (internal quotation marks omitted). Eldridge v.Eldridge, supra, p. 529.
Although the parties' written agreement was not a legal modification, it was evidence of the fact that the plaintiff agreed to postpone implementation of the court-ordered COLA provision. The evidence at hearing established that the plaintiff accepted the monthly $1,300 payments and did not insist on the annual increases during the period from September 1999 until March 2001. The court notes that the plaintiffs contempt motion was filed in May 2001, approximately one month after the defendant moved to modify the child support order.
Based on these facts, the court finds it reasonable that the defendant erroneously concluded he was not required to pay the increased child support during the period of time in question. The court finds that the plaintiff has failed to prove willful contempt on the part of the defendant by clear and convincing evidence. Accordingly, the plaintiffs motion for a finding of contempt is hereby DENIED. The court does find that an arrearage is owed to the plaintiff by the defendant for child support that was not paid in accordance with the 1997 order. Orders pertaining to that arrearage will be set forth below.
The defendant's motion for modification is based upon his claim of an increase in the amount of parenting time which he spends with the minor children. The defendant contends that this purported increase in access constitutes a substantial change in circumstances and/or a reason to deviate from the statutory child support guidelines which justifies a decrease in his child support payments. The defendant's motion reads in part:
 "Since the date of judgment the defendant's access with the minor children is alternate weekends and CT Page 828 every Tuesday/Wednesday overnights."
 The access schedule referred to above was ordered by Judge Rubinow on April 16, 1997 when the orders providing for COLA increases were entered.
Therefore, the court does not find that the defendant's access schedule has substantially changed since the date of the last modification.
Although the defendant also claims that the amount of time which he spends with the children warrants a deviation from child support guidelines, the court is not persuaded. The Child Support and ArrearageGuidelines published by the State of Connecticut Commission for Child Support Guidelines indicate that a finding of shared physical custody should be made ". . . only where the noncustodial parent exercises visitation or physical care for periods substantially in excess of a normal visitation schedule. The commission recognizes that a normal visitation schedule is typically two overnights on alternate weekends; alternate holidays; some vacation time; and other visits of short duration, which may occasion an overnight stay during the week." ChildSupport and Arrearage Guidelines, Deviation Criteria (h)(4), p. viii. See also Section 46b-215 a-3(b)(6)(A) of the Regulations of State Agencies.
The court does not find from the evidence presented that the defendant's access schedule so substantially exceeds a normal visitation schedule that it constitutes a shared parenting arrangement which permits deviation from the presumptive support amounts.
The defendant's October 18, 2001 financial affidavit indicated that he receives total net weekly income of $968.50. That affidavit also noted: "Mr. Miller received a one-time bonus in 2001 in the amount of $19,300.00. His bonus for 2000 was $5,500 and $6,313.00 for 1999." The plaintiffs October 18, 2001 financial affidavit reflects that she receives net weekly wages of $404, plus child support payments of $302, for total net weekly income of $706.
Having compared the parties' current affidavits with the financial statements which each submitted to the court on the date of the last modification in 1997, the court finds that there has not been a substantial change in financial circumstances which justifies a modification.
Because the defendant has failed to prove by a preponderance of the evidence either grounds for deviation from the child support guidelines, or a substantial change in the circumstances of the parties, his motion CT Page 829 to reopen and modify the dissolution judgment is hereby DENIED.
 ORDERS
The court has found that there is a child support arrearage owed to the plaintiff by the defendant for the unpaid cost of living adjustment sums ordered in the the 1997 modification.
At the request of the court, the plaintiff submitted a computation of the arrearage owed in her post trial memorandum. It is unknown if the defendant concurs with that sum, or the basis of its calculation. The court is unable, based on the evidence presented at hearing, to determine the exact amount of arrearage owed by the defendant to the plaintiff.
Accordingly, the court orders that the parties appear before the undersigned for further hearing on this matter at 9:30 a.m. on February 26, 2002 in Courtroom 306 of the Superior Court at 95 Washington Street in Hartford. The limited purpose of this hearing will be to enter further orders determining the exact amount of arrearage owed, and a schedule for its repayment. The parties and counsel of record are ordered to appear at court promptly at 9:30 a.m. on February 26 for the hearing, which, due to other scheduled matters, will not exceed one hour in length. The court directs that the pro se defendant and counsel for the plaintiff confer prior to the date of the court hearing and attempt to agree upon the arrearage and/or the method of its computation. If the parties are not able to agree on these issues, each should be prepared to offer evidence pertaining to same at the February 26 hearing.
No counsel fees are awarded to either party.
SO ORDERED.
BY THE COURT:
 ___________________ Dyer, J.