CLAIRE D. FRIEDLANDER *v.* HENRY Z. FRIEDLANDER
(10785)
(10870)
(11456)

PETERS, HEALEY, PARSKEY, GRILLO and F. HENNESSY, Js.

Argued June 1—decision released August 9, 1983

*Henry Z. Friedlander,* pro se, the appellant (defendant in each case).

*Saul Kwartin,* for the appellee (plaintiff in each case).

PARSKEY, J. This case presents three appeals by the defendant that were consolidated for the purposes of oral argument. In appeal No. 10785, the defendant appeals a contempt order and a $1000 fine, the award to the plaintiff of counsel fees in connection with the contempt, the granting of a $3000 allowance to the plaintiff to defend this appeal, and the denial of the defendant's motion to reargue, modify, and order. In appeal No. 10870, the defendant appeals the denial of his motion for order, the award to the plaintiff of counsel fees for defense of that motion, and the granting of a $3500 allowance to the plaintiff to defend this appeal. In appeal No. 11456, the defendant appeals a denial of his motion for order, the award to the plaintiff of counsel fees for defense of that motion, and a subsequent contempt order.

The underlying facts that are common to all three appeals are as follows: The parties were married in 1961. They have two children, Jeffrey, born in 1963, and Joel, born in 1966. The parties were divorced on August 19, 1971. The court approved the parties' written separation agreement and ordered it placed in the file of the case. As part of the judgment, the court awarded the plaintiff wife, inter alia, custody of the two sons, $5000 lump sum alimony, and the right to occupy the family home at 33 Lolly Lane, Stamford, which is jointly owned by the parties. The defendant husband was awarded, inter alia, reasonable visitation.

Immediately after the decree a barrage of litigation between the parties ensued, only some of which is relevant here. On March 17, 1972, the court granted the plaintiff's motion that the defendant's visitation rights be exercised at a place other than the premises of 33 Lolly Lane. On August 30, 1972, the plaintiff sought to clarify the defendant's rights with respect to 33 Lolly Lane and moved that the court specifically prohibit "the defendant from entering upon the land or building at 33 Lolly Lane, Stamford." On September 8, 1972, the court granted the motion, stating "Defendant forbidden to go on land or in building at 33 Lolly Lane, Stamford, Conn." It is this order, not appealed by the defendant, that is the crux of all three appeals.

## Appeal No. 10785

The defendant continued to enter the land and premises of 33 Lolly Lane. As a result, between 1975 and 1980 the plaintiff filed and was granted a series of contempt motions, none of which the defendant appealed. Despite these findings of contempt, on October 25, 1980, the defendant went to the house for an unscheduled visit with his sons. An altercation ensued which resulted in the plaintiff's calling the police. The

plaintiff filed another contempt motion, which was granted on November 17, 1980. In addition, the defendant was fined $1000 and was ordered to pay the plaintiff's counsel fees. On December 4, 1980, the defendant appealed this order.[1] On December 19, 1980, the defendant submitted to the Appellate Session of the Superior Court a "list of 75 perfidious acts committed by wife's counsel." On January 18, 1981, the court granted the plaintiff's motion for an allowance to defend this appeal and ordered the defendant to pay the plaintiff $3000 for this purpose. On January 19, 1981, the defendant, pursuant to Practice Book § 3062, appealed this allowance.

On the same day, the defendant filed a motion to reargue, modify, and order in which he requested the vacation of the March, 1972 modification order, the September, 1972 modification order, the November, 1980 contempt order, and the January, 1981 allowance of counsel fees as well as the reinstatement of his rights as determined by the original 1971 decree. In addition, he requested counsel fees. This motion[2] was denied on February 2, 1981, for failure to conform to the rules of practice. On February 18, 1981, the defendant included in his preliminary statement of issues the denial of this motion.

This court's role in reviewing a contempt order is very limited. "An adjudication of contempt is final and may be reviewed only on questions of jurisdiction such as whether the court had authority to impose the punishment inflicted and whether the act or acts for which the penalty was imposed could constitute a contempt."

---

[1] The defendant filed his appeal in the Appellate Session of the Superior Court which transferred it to this court on May 4, 1981.

[2] This motion and order are not in the printed record, but they are in the file, of which this court may take judicial notice. *Krawiec* v. *Kraft,* 163 Conn. 445, 451, 311 A.2d 82 (1972).

*State* v. *Jackson,* 147 Conn. 167, 170, 158 A.2d 166 (1960); see *McClain* v. *Robinson,* 189 Conn. 663, 669-70, 457 A.2d 1072 (1983). With this in mind, we turn to the defendant's claims arising out of the November 17, 1980 order of contempt, attorneys' fees and $1000 fine.[3]

We first address two challenges that can be dismissed summarily, the defense of laches and the claim that the September, 1972 order was vague and ambiguous. "Laches consists of an inexcusable delay which prejudices the defendant." *Danaher* v. *C. N. Flagg & Co.,* 181 Conn. 101, 107, 434 A.2d 944 (1980). The defendant claims that the plaintiff waited "eight years and two months before asserting that the Husband could not go up and down the driveway of his domicile." This claim is at best disingenuous. The record shows that the plaintiff initiated four contempt motions that were granted in the last eight years. It was hardly error for the court to determine that this did not constitute delay and to reject the defendant's claim of laches.

Equally disingenuous is the defendant's claim that his conduct was innocent because the September, 1972 order was vague. The defendant premises this argument on an insistence that the word "land" does not

---

[3] Throughout the appeal, the defendant challenges a number of rulings that excluded his repeated attempts to introduce evidence that he termed "background . . . facts." The excluded evidence includes various provisions of the 1971 separation agreements; "flaws" in the March 17, 1972 order, in the September 8, 1972 hearing, and in the 1975 and 1979 contempt orders (none of which the defendant ever appealed); the plaintiff's conduct dating back to 1966, that the defendant claims proves unclean hands on her part; the plaintiff's conduct since 1974, that the defendant claims proves consent to his conduct; and the conduct of the police when they responded to the plaintiff's call on October 25, 1980. The record reveals that the defendant, a member of the Connecticut Bar, did not object or except to any of these rulings as required by Practice Book § 288. As a result they are not subject to our review. *Kavanaugh* v. *Lewis,* 187 Conn. 534, 535-36, 447 A.2d 6 (1982).

appear in the order but rather the word "property" does appear, and "property" has never been interpreted to mean "land." Hence, he claims he is without fault for violating the order.[4]

Because no person ought to be entrapped by vague and general orders; *Rogers Mfg. Co.* v. *Rogers,* 38 Conn. 121, 125 (1871); this claim, were it factually based, would give us pause. But the defendant's claim is based in fantasy, for the September, 1972 order clearly reads: "Defendant Forbidden to Go on Land or in Building at 33 Lolly Lane, Stamford, Conn." The word "property" does not even appear in the order.

"The inability of the defendant to obey an order of the court, without fault on his part, is a good defense to a charge of contempt. 17 Am. Jur. 2d, Contempt, § 51." *Tobey* v. *Tobey,* 165 Conn. 742, 746, 345 A.2d 21 (1974). In this case, however, where the order is crystal clear, where the defendant was found in contempt of this very order four times, and where the defendant admits to having been on the land on October 25, 1980, his conduct cannot be characterized as innocent.

The defendant next challenges the imposition of $300 in counsel fees and a $1000 fine as arbitrary and capricious and excessive. We do not agree. The court has the power to fine one who has been found in contempt. See, e.g., *Board of Education* v. *Shelton Education Assn.,* 173 Conn. 81, 85, 376 A.2d 1080 (1977). The plaintiff has had to bring five contempt motions in order to enforce the September, 1972 order. Three of those

---

[4] The defendant argues throughout that the September, 1972 order could not totally preclude him from entering the house and land because the separation agreement, which contains an anti-merger clause, grants him access for various purposes. We do not address that issue as a defense to a contempt order. The defendant's recourse is in a suit for breach of contract. See, e.g., *Marcus* v. *Marcus,* 175 Conn. 138, 394 A.2d 727 (1978).

contempt orders included small fines and yet the defendant continued to violate the order. Given these facts, the $1000 fine and the award of $300 in counsel fees could hardly be deemed excessive or an abuse of discretion.

Similarly, it was not an abuse of discretion for the judge to award the plaintiff an allowance of $3000 to defend this appeal. The "inherent" power of the court to award such an allowance is well settled. See *Krasnow* v. *Krasnow,* 140 Conn. 254, 261, 99 A.2d 104 (1953). "Whether to allow counsel fees, and if so in what amount, calls for the exercise of judicial discretion." *El Idrissi* v. *El Idrissi,* 173 Conn. 295, 301–302, 377 A.2d 330 (1977). In exercising its broad discretion it is appropriate for the court to consider the statutory criteria set out in General Statutes §§ 46b-62 and 46b-82 and the respective financial abilities of the parties. The defendant contends that the trial court abused its discretion in awarding the allowance because the plaintiff works and the parties have economic parity. The trial court held a hearing on the parties' financial status on January 12, 1981. A reading of the transcript reveals that it did not find economic parity between the parties and awarded the allowance on the basis of the defendant's "asset picture" and the numerous suits the plaintiff has had to defend.

"The basis of the allowance is that she [the wife] should not be deprived of her rights because she lacks funds . . . ." *Steinmann* v. *Steinmann,* 121 Conn. 498, 505, 186 A. 501 (1936). The plaintiff has had to defend numerous suits, some "frivolous," on matters that were long ago adjudicated. She has also had to bring five contempt motions. In addition to these three appeals, there is another appeal pending and numerous

suits in the lower courts. In light of all this evidence, it was not an abuse of discretion for the court to award the plaintiff an allowance to defend this appeal.[5]

Finally, the defendant claims that it was error for the court on February 2, 1981, to dismiss his "Motion to Reargue, Modify and Order" which sought to vacate the contempt order and all other orders on the basis of allegedly new evidence. The defendant also sought counsel fees. The court dismissed the motion for failure to conform to the rules of practice and denied the defendant counsel fees. Since the issues raised in that motion were not properly before the trial court, we cannot consider them here. Practice Book § 3063.[6]

## APPEAL No. 10870

On May 8, 1981, the defendant filed a motion for order for an immediate hearing "to complete action on several matters currently unresolved in this Court . . . ." Included as "unresolved" were four motions the defendant had previously filed: a motion for contempt (denied October 22, 1979); a motion for order regarding Christmas visitation (filed December 13, 1979, never acted on presumably because it became moot); a motion to compel withdrawal of the plaintiff's

---

[5] The defendant also challenges the evidentiary rulings at the January 12, 1981 hearing on the motion on many of the same grounds as in the November 17, 1980 contempt hearing. In fact, in his brief, the defendant incorporates by reference his earlier arguments. Since, as before, the defendant did not object or except to these rulings, we will not consider them here. Practice Book § 288.

[6] We will not address the defendant's list of allegations of misconduct against the plaintiff's counsel. As the defendant, a lawyer, should know, merely submitting a list of alleged misconduct to this court will not invoke its jurisdiction. See *Bartha* v. *Waterbury House Wrecking Co.,* 190 Conn. 8, 12, 459 A.2d 115 (1983). Secondly, the defendant presented these issues in a motion to compel withdrawal of the plaintiff's counsel, which was denied. Since he did not appeal from that decision, he can not surreptitiously revive it here.

counsel (denied January 12, 1981); and a motion for contempt (denied March 2, 1981). On June 6, 1981, the court denied this omnibus motion, deeming it frivolous, and awarded the plaintiff counsel fees.[7]

On June 8, 1981, the defendant appealed the denial of the motion and the award of counsel fees.[8] On July 6, 1981, the court ordered the defendant to pay the plaintiff a $3500 allowance for counsel fees to defend this appeal. The defendant appealed this order.[9]

In challenging the denial of his omnibus motion, the defendant focuses on the denial of the motion to compel withdrawal of counsel, which had been initially denied on January 12, 1981.[10] Both parties have briefed the substantive issue of whether the court has such power. In finding no error in the court's dismissal of the omnibus motion, however, we need not discuss the merits. "Parties cannot be permitted to waste the time of courts by the repetition in new pleadings of claims which have been set up on the record and overruled at an earlier stage of the proceedings." *Hillyer* v. *Winsted,* 77 Conn. 304, 306, 59 A. 40 (1904).

---

[7] It should be noted that on November 21, 1977, Judge Melville denied a series of the defendant's motions as "frivolous, repetitious and not filed in good faith" and ordered that counsel fees would be ordered if any further motions were found "frivolous," "not filed in good faith," or repetitive.

[8] The defendant filed his appeal in the Appellate Session of the Superior Court which transferred it to this court on June 25, 1981.

[9] The defendant's revised statement of appeal includes additional claims of error with respect to the previous motion and is not solely limited to the motion for allowance.

[10] The defendant claims that in denying the motion on January 12, 1981, the court invited him to submit a memorandum on whether the court had the power to entertain the motion. Our reading of the transcript reveals that this is patently untrue. Despite the fact that the defendant did not prepare a memorandum of law, the court patiently heard the defendant on the issue of jurisdiction. The defendant makes reference to the hearing on March 23, 1981, at which the court did tell the defendant to resubmit a totally different motion. This cannot be construed, as the defendant has chosen to do, to constitute an invitation to resubmit all of his previously adjudicated motions.

By the defendant's own admission, as of January 12, 1981, the parties had been in court 119 times and over 1000 hours. Throughout this litigation, the defendant has attempted to relitigate issues already adjudicated. The plaintiff has had to defend each and every one of these motions. Here, the defendant, by merely retitling a motion, sought to relitigate prior motions. The judge was not in error for dismissing it as frivolous.[11] In light of our previous discussion, the court did not err in awarding $625 counsel fees and a $3500 allowance to defend this appeal.[12]

## APPEAL No. 11456

On May 5, 1982, the defendant filed a motion for order to cancel all modifications of the original (1971) judgment and restore him to "his original visitation and ancillary rights" until his younger son reaches majority. On May 17, 1982, the motion was denied and the plaintiff was awarded counsel fees for defense of that motion.

On May 24, 1982, the plaintiff filed a contempt motion claiming that the defendant again violated the September, 1972 order forbidding him to enter the land and premises at 33 Lolly Lane. The motion was granted with counsel fees. On May 28, 1982, the defendant appealed both decisions.

---

[11] The defendant challenges the court's various rulings excluding certain evidence at the June 1, 1981 hearing. The transcript reveals that the defendant did not object or except to *one* of these rulings. Practice Book § 288. When the court issued its order at the end of the hearing, the defendant did take an exception. This exception to the order will not suffice as a proper objection to the previous evidentiary ruling. Cf. *Putnam, Coffin & Burr, Inc.* v. *Halpern,* 154 Conn. 507, 513, 227 A.2d 83 (1967).

[12] The transcript of the July 6, 1981 hearing on the allowance reveals that the defendant did not properly object and except to any of the court's rulings. Practice Book § 288. As before, we cannot consider them here.

The defendant's motion for order cancelling all previous motions is yet another attempt by the defendant to relitigate issues long ago adjudicated. As the plaintiff points out in her brief, "this was approximately the tenth time that substantially the same motion was brought to the court for determination." Repeatedly, the defendant, in derogation of the rules of practice, has endeavored simply to obliterate years of judicial decrees. These attempts to circumvent the Practice Book will not be countenanced. "Courts have an inherent power to disregard sham or frivolous pleadings which have been interposed for the purpose of thwarting the orderly progress of a case. 20 Am. Jur. 2d, Courts § 79; 61 Am. Jur. 2d, Pleading § 26; see *Kennedy* v. *Creswell,* 101 U.S. 641, 644, 25 L. Ed. 1075 (1880); *Metropolis Mfg. Co.* v. *Lynch,* 68 Conn. 459, 472, 36 A. 832 (1896)." *Burritt Mutual Savings Bank of New Britain* v. *Tucker,* 183 Conn. 369, 373, 439 A.2d 396 (1981). The court did not err in dismissing the motion.

Similarly, the court did not err in granting the plaintiff's contempt motion and in awarding the plaintiff counsel fees. The sole testimony at the May 24, 1982 hearing was that of the defendant's sixteen-year-old son. He testified that while the plaintiff was away, the defendant entered the house, announced, "[d]on't tell your mother, but I want to have a look around the place," and proceeded from room to room. The defendant admits to having entered the house but denies it was contemptuous because the son "readily acquiesced" to his entrance. As discussed earlier, and as has been reiterated to the defendant by various trial judges, the September, 1972 order is starkly clear. The trial court was fully justified in adjudicating the defendant in contempt.

There is no error.

In this opinion the other judges concurred.