[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendants in this case are Saul Kwartin, an attorney practicing in Stamford, Wofsey, Rosen, Kweskin and Kuriansky, the law firm of which Mr. Kwartin is a partner, and the plaintiff's former wife, Claire Friedlander. The defendants have moved for summary judgment. Practice Book S CT Page 6455 384. The grounds for this motion are: (i) that all the allegations in the complaint have already been the subject of prior litigation and hence are subject to dismissal on grounds of res judicata and collateral estoppel; (ii) that the statute of limitations has expired on all the allegations of the complaint; and (iii) that the complaint does not state a cause of action.
Before turning to the complaint, I believe this current litigation should be analyzed against the background that it will be twenty years next month since these parties were divorced, and almost twenty-three years since the commencement of the dissolution action. In Friedlander v. Friedlander, 5 Conn. App. 1, 2, 496 A.2d 964 (1985), the Appellate Court stated that the case then under consideration was ". . . another chapter in what has become a bitter and protracted marital dissolution dispute." Little did that court have reason to anticipate that since 1985, at least four other lawsuits were commenced in this court.[1]
According to Mr. Friedlander, and I have no reason to doubt him, twenty-eight separate lawsuits have been generated by the divorce of Henry and Claire Friedlander in 1971. Plaintiff also said that he had been in court on approximately 375 motions and that he had expended nearly 6000 hours of his own time on these various cases.[2]
A review of the financial affidavits in the original divorce action indicates that the parties were of relatively modest means. Mr. Friedlander was earning about $13,000, and Mrs. Friedlander apparently was not employed outside the home at the time of the divorce. By 1974 she was earning about $8,000 a year. Their only significant asset was a jointly held home on Lolly Lane in Stamford, and the parties indicated that their total equity was somewhere in the $22,000 range at that time. Yet the divorce has spawned an unbelievable amount of litigation, including this case.
The complaint at issue is dated March 11, 1989 and consists of one count containing twenty-eight paragraphs. The plaintiff, Henry Friedlander, who is representing himself pro se, described his complaint as a generic prima facie, common law tort count in his affidavit and documents in opposition to summary judgment.[3] The plaintiff indicates that there are three specific causes of action in his complaint. The first he describes as "common law tort, prima facie tort comprising the elements of; intent; lack of justification; and injury or damages." The second tort is called "interference with contract." Reference is to the separation agreement of 1971. The third is characterized as "[t]he tort of the intentional infliction of emotional CT Page 6456 distress." A copy of the March 11, 1989 "substitute complaint" is attached to this decision as Appendix A.
The salient features of this complaint appear to be as follows; (i) that the defendant attorneys for Mrs. Friedlander prepared a judgment of dissolution which contained provisions different from those found in the separation agreement; (ii) that Mrs. Friedlander breached a number of articles of the separation agreement;[4] (iii) that one provision of the agreement provided in part that the plaintiff be given "unlimited reasonable access" to the former marital home at 33 Lolly Lane, Stamford, and that Mrs. Friedlander's lawyers "aided" her in violating his rights, and "advised" her to breach the separation agreement; (iv) that the attorney defendants have sought counsel fees contrary to the separation agreement; (v) that Mrs. Friedlander's financial affidavits submitted in the 1968 divorce action and at other times were false; (vi) that all three defendants maliciously "induced" plaintiff's two sons to testify against him; (vii) that the separation agreement and judgment obligate the parties to sell the marital home but that the lawyers "influenced" Mrs. Friedlander not to do so; (viii) that the lawyer defendants have committed "approximately 85 improper or unethical acts" in the litigation between himself and his former wife; and (ix) that all of the above caused him physical and emotional damage, loss of his employment, inability to find other employment, and the expenses and lost time of litigation.
It will be noted that Attorney Kwartin, the law firm of Wofsey, Rosen, Kweskin and Kuriansky, and Mrs. Friedlander are all defendants in this action, but Mrs. Friedlander does not appear in the plaintiff's mind to be a prime defendant. In fact, at one point in oral argument Mr. Friedlander indicated that he would agree to drop Mrs. Friedlander as a defendant if she would then join him in the role of a plaintiff, and if so, he would be willing to share with her some of the money he anticipated recovering from the other defendants.
It is clear that the allegations against Mrs. Friedlander have been the subject of at least two prior lawsuits, CV 77 35570 and CV 80 48326. (See Appendices B and C respectively for the complaints in those two cases.) These cases were consolidated for trial and on April 30, 1985 Judge Emmett issued a thirty-seven page opinion which addressed the issues now pending before this court. She described those two actions in the following words; "[p]laintiff (Henry Friedlander) asserts that defendant (Claire Friedlander) is liable to him for interference with CT Page 6457 his relationship with his children, for both intentional and negligent infliction of emotional distress, for wanton and reckless conduct, for vexatious litigation and malicious prosecution and for various breaches of the separation agreement between the parties. . ."
Judge Emmett pointed out, among other things, that the parties had their marriage dissolved on the uncontested calendar; that both parties had lawyers at the time they executed the separation agreement; that Mrs. Friedlander had not alienated the children from their father, but rather that they had a good relationship with Mr. Friedlander; that in the context of a marital breakup there was no cognizable cause of action in this state for intentional or negligent infliction of emotional distress; that there had been no malicious prosecution or vexatious suit by Claire Friedlander; and finally, that Mrs. Friedlander had not committed any breaches of the separation agreement, and accordingly that "defendant has committed no actionable wrongs."[5]
Judge Emmett's decision discusses the complaint by Mr. Friedlander that the separation agreement and the judgment were different in some respects, and points out that the judge who heard the case decided that certain provisions in the judgment should be amended. There was no appeal from this 1971 judgment. Whether Mrs. Friedlander had breached the separation agreement was heard in both cases. For instance, paragraph 7 of the 1980 case lists some 35 alleged breaches by the defendant including attempts to deny the plaintiff's access to the home. This issue of Mr. Friedlander's access to the former marital residence was also discussed by the Supreme Court in Friedlander v. Friedlander, 191 Conn. 81, 86, 463 A.2d 587 (1983), where his claims to the home were said to be based on "fantasy." The subject of counsel fees was also litigated. Id. 86-87. The parties simply agreed that each would be responsible for his and her own counsel fees at the time of the divorce. This has nothing to do with subsequent contempt motions and appeals in which counsel fees were awarded. The claim of alleged fraudulent financial affidavits submitted by Mrs. Friedlander is being brought up by the plaintiff twenty years too late, as there was no appeal from the decree of dissolution. Mr. Friedlander's argument that the sons had been "induced" by the lawyers to testify against the plaintiff is not a recognizable tort in my opinion, and in addition, Judge Emmett in her 1985 decision stated that the sons had a meaningful relationship with their father. She also said that ". . . all of (Mr. Friedlander's) principal complaints concerning breaches of the separation agreement CT Page 6458 relate to alleged violations of Article III `Custody and Visitation.'" Arguments about custody and visitation have been presented to the courts for the last twenty years. The youngest son is over 25 years old now, and this whole subject of custody and visitation should finally be put to rest.
Thus, the only difference between this lawsuit and the two previous cases decided by Judge Emmett, as well as the 1983 Supreme Court decision, is that Mr. Friedlander has taken the same allegations previously directed against his former wife and now asserts them against her attorneys, even though his claims against Mrs. Friedlander were found to be groundless. Mr. Friedlander claims that his former wife's lawyers committed some form of unspecified tort by aiding and abetting her in doing what previous courts have found to be proper. Even if Mrs. Friedlander had previously been determined to have violated certain provisions of the separation agreement, I am unaware of what cause of action would lie against her attorneys, other than the ones hereinafter discussed, none of which is alleged in this action. The plaintiff's attack on his former wife's counsel is nothing new. In the 1983 Supreme Court case it was pointed out, Id., 84, that the defendant had previously alleged misconduct against Mrs. Friedlander's lawyers by submitting a "list of 75 perfidious acts, committed by wife's counsel" to the Appellate Session of the Superior Court. The allegations of misconduct were also the subject of a motion to compel the withdrawal of Mrs. Friedlander's lawyers, which was denied. "[s]ince (Mr. Friedlander) did not appeal from that decision, he cannot surreptitiously revive it here." Id., 88, n. 6.
I believe, therefore, that the plaintiff's allegations in this complaint fall within the definition and scope of res judicata and collateral estoppel as discussed in a number of cases including Gionfriddo v. Gartenhaus Cafe,15 Conn. App. 392, 401-402, 546 A.2d 284, cert. granted209 Conn. 809, 548 A.2d 437, aff'd 211 Conn. 67, 557 A.2d 540
(1988). "The doctrines of res judicata and collateral estoppel protect the finality of judicial determinations, conserve the time of the court, and prevent wasteful relitigation." Id., 401. In a general way res judicata or claim preclusion prevents one from reasserting a claim that has previously been decided on its merits. Collateral estoppel, or issue preclusion, prevents a party from relitigating issues that have been determined in a prior suit. Even though Attorney Kwartin and his law firm were not parties as such to any prior litigation, Griffin v. Parker,22 Conn. App. 610, 623, 579 A.2d 532 (1990), indicates that CT Page 6459 the element of mutuality of parties is no longer required; Id., 618. All the claims in the complaint, as well as all the issues, have been litigated before.
What we have here in my judgment is a replay of precisely what the Supreme Court criticized in its 1983 decision in its various references to frivolous suits concerning ". . . issues long ago adjudicated." Friedlander v. Friedlander supra, 91. Mr. Friedlander is now attempting to do what he has done before, according to the Supreme Court, ". . . by merely retitling a motion, (he) sought to relitigate prior motions." Id., 90. His attempt to relitigate his access to the Lolly Lane premises was described as ". . . yet another attempt by the defendant to relitigate issues long ago adjudicated. . . Repeatedly (Mr. Friedlander) in derogation of the rules of practice, has endeavored simply to obliterate years of judicial decrees." Id., 91. The Supreme Court quotes Hillyer v. Winsted, 77 Conn. 304, 306, 59 A. 40
(1904), for the proposition which I believe aptly describes this case; "[p]arties cannot be permitted to waste the time of courts by the repetition in new pleadings of claims which have been set up on the record and overruled at an earlier stage of the proceeding." Id., 89. In this case we have the same claims that have been litigated and litigated previously but now have been recast to assert that the alleged breaches of the separation agreement and judgment by Mrs. Friedlander are all the fault of her counsel, Attorney Kwartin and his law firm. I do not believe that these attempts to relitigate what has already been litigated should be countenanced. No matter how many complaints or how many thousands of words one reads from Mr. Friedlander, they all really come down to the same two themes; that Mrs. Friedlander damaged his relationship with his two sons, and that he should never have been denied access to the marital premises. These two issues, however, have been litigated many, many times. If thwarted in one decision or motion, Mr. Friedlander simply repackages these two themes in another lawsuit.[6]
Moreover, although the complaint contains allegations of "85" unethical acts on the part of the attorney defendants, the plaintiff does not claim that ethical violations should be the subject of this suit, as contrasted with grievance proceedings. He does not assert a malpractice claim against the lawyers because, of course, they represent Mrs. Friedlander, and Mr. Friedlander has not demonstrated that he ". . . was the intended or foreseeable beneficiary of the attorney's service." Krawczyk v. Stingle, 208 Conn. 239,244, 543 A.2d 773 (1988). Mr. Friedlander does not claim vexatious suit or abuse of process. He simply says in his CT Page 6460 complaint that Mrs. Friedlander violated their separation agreement dated August 19, 1971, and the decree of dissolution of their marriage, dated June 9, 1972, and that Attorney Kwartin and his law firm are somehow responsible on some unidentified theory for these alleged violations by their client.
Although it is well recognized that summary judgment should be granted only if there is no genuine issue as to any material fact, and that evidence must be viewed in the light most favorable to the nonmovant (Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578-79, 573 A.2d 699
(1990)), nevertheless "[it] remains . . . incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exist." Connell v. Colwell, 214 Conn. 242, 251, 571 A.2d 116 (1990). The defendant has failed to do this, and hence summary judgment is granted in favor of the defendants on the plaintiff's complaint.[7]
So Ordered.
Dated at Stamford, Connecticut, this 30th day of July, 1991.
WILLIAM B. LEWIS, JUDGE